### UNITED STATES v. TIFFANY & CO.

(Circuit Court of Appeals, Second Circuit. January 7, 1908.)

No. 106 (4,036).

1. CUSTOMS DUTIES—CLASSIFICATION—METAL STATUARY.
    In Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 454, 30 Stat. 194 (U. S. Comp. St. 1901, p. 1678), relating to "statuary * * * wrought by hand from a solid block or mass of marble * * * or from metal," the words "solid block," etc., do not refer to "metal."

2. SAME—STATUARY—COMPONENT OF MINOR VALUE, BUT OF CHIEF QUANTITY— "STATUARY * * * WROUGHT * * * FROM METAL."
    In Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 454, 30 Stat. 194 (U. S. Comp. St. 1901, p. 1678), the provision for "statuary * * * wrought * * * from metal" does not require metal to be the only component, or even the component of chief value. It is enough if it so greatly predominate as to characterize the entire work.

3. SAME—"BY HAND."
    In Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 454, 30 Stat. 194 (U. S. Comp. St. 1901, p. 1678), relating to "such statuary as is cut, carved, or otherwise wrought by hand * * * and as is the professional production of a statuary or sculptor only," it is not necessary that the entire work on a statue shall be "by hand," nor that the entire handiwork must be that of the statuary or sculptor personally.

4. SAME—BRONZE STATUARY.
    A statute of great value and high artistic merit, in which bronze was overwhelmingly predominant in bulk, though ivory was the component of chief value, was produced by the "cire perdue" process. After the metal part was cast, it was gone over carefully by hand by a renowned sculptor, who thereby made the alterations necessary to the execution of his artistic conceptions; this being the important part, which gave the piece its distinctive personal character. The entire work, from the original conception to the last touch, was under the sculptor's constant supervision, and he did everything that a sculptor could do to make his work complete. Held, that this statue was within the provision of Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 454, 30 Stat. 194 (U. S. Comp. St. 1901, p. 1678), for "such statuary as is cut, carved, or otherwise wrought by hand * * * from metal, and is the professional production of a statuary or sculptor only."

5. SAME—"STATUARY"—LEGISLATIVE INTENTION—LIBERAL CONSTRUCTION.
    In providing a low rate of duty on works of art in Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 454, 30 Stat. 194 (U. S. Comp. St. 1901,

p. 1678), Congress evidently intended to welcome the works of meritorious artists and sculptors, and to exclude from the low rate the productions of artisans and empirics. The definition of statuary as "the professional production of a statuary or sculptor only" was aimed against such articles as are made by machinery or unskilled labor, or are cast in large numbers from molds by ordinary workmen. Such a paragraph should be construed liberally.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, p. 6646.]

6 SAME—STATUTORY CONSTRUCTION—DOUBTFUL INTERPRETATION.

The doctrine that duties should not be imposed upon the citizen under a vague or doubtful interpretation of the law is especially applicable to a case which is sui generis and relates to an article which is in a class by itself.

Appeal from the Circuit Court of the United States for the Southern District of New York.

On appeal by the United States from a decision of the Circuit Court, reversing a decision of the Board of General Appraisers, which affirmed the decision of the collector, assessing an ad valorem duty of 35 per centum upon Gerome's statue "La Bellona," as a manufacture of metal and ivory, ivory chief value, under Act July 24, 1897, c. 11, § 1, Schedule N, par. 450, 30 Stat. 194 (U. S. Comp. St. 1901, p. 1678). The Circuit Court held the statue dutiable, at 15 per centum ad valorem, as statuary, under paragraph 454 of the same act and section 3 thereof permitting the reciprocity treaty with France thereafter concluded. 30 U. S. Stat. 151, 193, 194, 203. The paragraphs in controversy are:

"Par. 450. Manufacturers of leather, finished or unfinished, manufacturers of fur, gelatin, guttapercha, human hair, ivory, vegetable ivory, mother-of-pearl and shell, plaster of paris, papier mâché, and vulcanized india-rubber, known as 'hard rubber,' or of which these substances or either of them is the component material of chief value, not specially provided for in this act, and shells engraved, cut, ornamented, or otherwise manufactured, 35 per centum ad valorem."

"Par. 454. Paintings in oil or water colors, pastels, pen and ink drawings and statuary, not specially provided for in this act, twenty per centum ad valorem; but the term 'statuary' as used in this act shall be understood to include only such statuary as is cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone or alabaster, or from metal, and as is the professional production of a statuary or sculptor only."

For decision below, see 154 Fed. 168.

J. Osgood Nichols, Asst. U. S. Atty.

D. Macon Webster, for the importers.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The subject of this controversy is a life-size statue, La Bellona, the Roman Goddess of War, one of the last works of the famous French sculptor, Gerome. It is a production of wide celebrity, it was exhibited at the French Academy and at the Paris Exposition and the French government was considering its purchase for one of their museums when the appellee bought it of the sculptor's widow. La Bellona is an allegorical embodiment of the hate, cruelty, vengeance and excitement of war. The face, arms and feet of the

statue are of ivory and the remainder is of metal which, so far as quantity and bulk are concerned, is overwhelmingly the principal component. The entire body, the mantle, drapery, helmet, breast-plate, cobra and pedestal are of bronze. The shield is either bronze or aluminum and is highly chased. The eyes are glass with gold underneath to bring out more clearly the ferocity of the expression. As to the manner in which the statue was constructed the record is not as explicit as it should be. It seems to be conceded, however, that it was made by the "cire perdue" process under the supervision of the sculptor who gave to its construction the best effort of his genius.

The various parts of bronze were cast, from models made by Gerome, by an accomplished bronzer, who consulted with the sculptor as to all details of the work. After the various parts had been cast, the important work, that which gives it its distinctive personal character, was done by hand, the sculptor carefully going over the figure and making the alterations and changes necessary to embody his ideas. It is this artistic feature, this expression of the sculptor's intentions, which gives value to the statue, not the price paid for the bronze and ivory. No one but a sculptor of the highest merit could have cut the ivory face, so symbolic of the horrors of war, or fashioned the cloak, which is considered one of the most wonderful pieces of bronze in existence. In short, the statue was the work of Gerome and to its minutest details he gave the best work of his brain and hand. La Bellona represents a new departure in art. Nothing like it was ever produced before. Its individuality is unique. It is this statue, conceded by all to be a master work of art, which is classified as a manufacture of metal and ivory and placed in the same category with articles made of india rubber, gelatin, leather and hair. Such a classification seems almost grotesque in its ineptness.

The learned General Appraiser who wrote the decision of the board evidently appreciated the injustice of the situation for he says:

"It may be thought to be illogical to hold that it (Bellona) is not entitled to the consideration assumed to be given to works of art of this character by the statute, but if fault there be, it is in the law and can only be remedied by legislation."

Of course, if this be a true exposition of the statute, it ends the discussion, but is not paragraph 454 capable of a liberal construction, broad enough to include a statute which it would seem, is clearly within the spirit of the law? That Congress, realizing the importance of works of art to a comparatively new country, has in all the later tariff acts discriminated in favor of paintings and statuary cannot be denied. It was the evident intention of the lawmakers to welcome the works of meritorious artists and sculptors on the one side, and on the other to prevent the productions of mere artisans and empirics from taking advantage of the lower duty.

We agree with counsel for the government that:

"The purpose of paragraph 454 to provide a low rate of duty for such works of art only as may represent the direct work of the artist, would not be pursued by including the great variety of commercial metal castings which would be claimed to be statuary in the ordinary use of that term."

The definition of "statuary" in the paragraph was evidently intended to exclude such articles as were made by machinery, or unskilled labor, or were cast in large numbers from molds by ordinary workmen. Such a statue as La Bellona is excluded from the paragraph only by the most strict and illiberal construction—a construction which by adhering closely to the letter of the law defeats the very purpose for which the law was enacted.

The Supreme Court has repeatedly said that this should not be done. In Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226, the court held that the contract made by the plaintiff in error, though clearly within the letter was not within the spirit of the act of February 26, 1885, designed to prevent the importation of aliens under contract of employment. The court says (page 459 of 143 U. S., page 512 of 12 Sup. Ct. [36 L. Ed. 226]):

"It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, not within the intention of its makers."

Again, in the recent case of Tobacco Co. v. Werckmeister (decided December 2, 1907) 207 U. S. 284, 28 Sup. Ct. 74, the court, construing the copyright law, says:

"But in construing a statute we are not always confined to a literal reading, and may consider its object and purpose, the things with which it is dealing, and the conditions of affairs which led to its enactment so as to effectuate rather than destroy the spirit and force of the law, which the Legislature intended to enact. * * * As we have said in the beginning, the statute is not clear, but read in the light of the purpose intended to be effected by the legislation, we think its ambiguities are best solved by the construction here given."

See, also, Taylor v. U. S. (decided by the Supreme Court November 18, 1907, 207 U. S. 120, 28 Sup. Ct. 53, Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969, and United States v. Perry (C. C.) 133 Fed. 841.

It cannot be pretended that the words "a solid block or mass" refer to metal, first, because that is not the grammatical reading of the sentence, and, second, because such an interpretation would exclude all metal statuary as it is not contended that statuary is at present cut or wrought from a solid block or mass of metal. The paragraph then, so far as it is necessary to consider it in the present case, reads as follows:

"Paintings * * * and statuary * * * twenty per centum ad valorem; but the term 'statuary' as used in this act shall be understood to include only such statuary as is cut, carved, or otherwise wrought by hand * * * from metal, and as is the professional production of a statuary, or sculptor only."

La Bellona answers every requirement of the statute. It is carved and wrought by hand from bronze and is the professional production of Gerome, a sculptor of world-wide fame. The paragraph does not say that the statue must be wrought exclusively by the hand of the sculptor, it recognizes the well-known fact that the great bulk of the carving is done by skilled workmen. Here the entire work

was done under the supervision of the sculptor and the finishing touches were added by his own hand, at least the evidence warrants such a presumption. Neither does the paragraph require that the entire work on the statue must be by hand. Bronze statues, as is well known, are cast from models precisely as marble statues are cut from models, the finishing being done by the sculptor or under his supervision. It cannot be assumed that Congress intended to exclude bronze statuary from the benefits of this paragraph, indeed, the exact contrary is to be presumed, otherwise nothing would have been said regarding metal statuary. Congress must have had bronze statuary in mind and the manner in which it was made when it used the language in question. If bronze statuary, which is the metal chiefly used in the art, be not included it is difficult to understand to what the language applies.

The case of Tiffany v. U. S., 71 Fed. 691, 18 C. C. A. 297, is principally relied on by the appellant. But it appeared in that case that the government's contention was that the importations were known as "commercial bronzes," some of them being reproduced many times and none of them receiving more than perfunctory attention from the original sculptor. There was also evidence that there were bronze statues made not by casting but by hand "beating." In the present case there is no such testimony and as we have before seen, the entire work, from the original conception until the last touch was placed upon the statue, was under the direct and constant supervision of Gerome. He did everything that a sculptor could do to make his work complete.

In a recent case relating to the importations of the Italian sculptor, Angelo del Nero, the Board of General Appraisers used language which, we think, is peculiarly applicable to the case in hand and which distinguishes it from the Tiffany Case, supra. The decision is written by the same General Appraiser who wrote in the present case, but nearly a year afterward. He says:

"When the metal comes from the mold it is in an extremely rough state, having upon its surface protuberances left by the hardening of the metal in the conduits through which it is poured into the mold, and incrustations resulting from the peculiar admixture of the alloy, which is made by a secret formula, designed to give the statue an antique tone or patina. In consequence of this the entire statue must be gone over carefully with the tool of the sculptor, the incrustations and protuberances removed and practically al the details chiseled out by hand. This mass of metal which comes from the mold may be compared with the block of marble after it has been chiseled by artisans to a shape roughly approximating that of the marble statue when it is taken in hand by the sculptor, who does the work which characterizes it and impresses the marble with his idea. The board is of the opinion that the quantity of hand work actually done by the sculptor on this metal statuary is as great if not greater than that done by the artist himself on the average marble statue. If such statuary it not 'wrought by hand from metal' there would seem to be no modern metal statuary to which paragraph 454 could apply. While in ancient and mediæval times a method existed of making metal statuary by hammering sheets of copper or bronze into the desired shape, that method is practically unknown at the present day. We accordingly hold that the statutary in question is entitled to assessment as such under the reciprocity agreement with Italy, at 15 per cent. ad valorem." G. A. 6,346 (T. D. 27,302).

It is asserted in the appellee's brief that no appeal has been taken by the government from the board's decision.

Convinced as we are that La Bellona is a bronze statue, we are of the opinion that the importer does not lose the benefit of the lower duty because the face, arms and feet are of ivory. Paragraph 454 does not say that a marble statue must be exclusively of marble, or a metal statue exclusively of metal. The limited use of ivory does not make La Bellona an ivory statue any more than the limited use of glass makes it a glass statue. It is enough that the metal so greatly predominates as to characterize the entire work. Any other interpretation would exclude a bronze statue supported on a stone pedestal or a marble statue carrying a metal shield or spear. The distinction is important when considering "manufactures" but it becomes insignificant when considering works of art. The fact that we are dealing with a metal statue overrides minor considerations.

Were it necessary to do so the well-known doctrine that duties should not be imposed upon the citizen upon a vague or doubtful interpretation of the law might be invoked in favor of the appellee. Hartranft v. Wiegmann, 121 U. S. 609, 7 Sup. Ct. 1240, 30 L. Ed. 1012. Especially is this doctrine applicable to a case which is sui generis and which relates to a work of art which is in a class by itself.

The judgment is affirmed.