ALTMAN & CO. v. UNITED STATES.

(Circuit Court, S. D. New York. May 21, 1909.)

No. 5,372.

1. CUSTOMS DUTIES (§ 37*)—CONSTRUCTION—RECIPROCAL COMMERCIAL AGREEMENTS—"STATUARY."

In Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 454, 30 Stat. 194 (U. S. Comp. St. 1901, p. 1678), the definition there given the term "'statuary' as used in this act,"' governs the provision for "statuary"' in section 3, 30 Stat. 203 (U. S. Comp. St. 1901, p. 1690), and the reciprocal commercial agreements negotiated as provided in said section.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 37.*

For other definitions, see Words and Phrases, vol. 7, p. 6646.]

2. CUSTOMS DUTIES (§ 37*)—BRONZE STATUARY—"WROUGHT BY HAND."

The provision for "statuary * * * wrought by hand * * * from metal," in Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 454, 30 Stat. 194 (U. S. Comp. St. 1901, p. 1678), does not include a bronze statue

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cast in a foundry by artisans from a model that was made in plastic material by an artist, but upon which he did little or no retouching.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 37.*

For other definitions, see Words and Phrases, vol. 8, p. 7549.]

On Application for Review of a Decision by the Board of United States General Appraisers.

The decision below, G. A. 6,813 (T. D. 29,279), affirmed the assessment of duty by the collector of customs at the port of New York. The opinion of the Board of General Appraisers reads as follows:

WAITE, General Appraiser. The question here arises over the importation of a bronze bust of Louis XVI, No. 4,221 on the invoice, valued at 800 francs, less 10 per cent. and 2 per cent. It was assessed for duty at 45 per cent. ad valorem under Tariff Act July 24, 1897, c. 11, § 1, Schedule C, par. 193, 30 Stat. 167 (U. S. Comp. St. 1901, p. 1645), which reads as follows:

"193. Articles or wares not specially provided for in this act, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem."

The importers claim it is dutiable at 15 per cent. ad valorem under the provisions of section 3, 30 Stat. 203 (U. S. Comp. St. 1901, p. 1690), and the reciprocal commercial agreement with France (30 Stat. 1774 [T. D. 19,405]), which agreement is authorized by said section 3 and provides, among other things, for the importation of paintings and statuary at the rate of 15 per cent. ad valorem. In order to have a full understanding of the issue here involved, it becomes necessary to consider said section 3 and the French treaty in connection with paragraph 454 of the act (Schedule N, 30 Stat. 194 [U. S. Comp. St. 1901, p. 1678]), which reads as follows:

"454. Paintings in oil or water colors, pastels, pen and ink drawings, and statuary, not specially provided for in this act, twenty per centum ad valorem; but the term 'statuary' as used in this act shall be understood to include only such statuary as is cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as is the professional production of a statuary or sculptor only."

It is claimed that the collector erred in assuming that the word "statuary," as used in section 3 and said commercial agreement, is subject to the provision in said paragraph 454 as to what shall be considered statuary, to wit:

"'Statuary' as used in this act shall be understood to include only such statuary as is cut, carved, or otherwise wrought by hand from * * * metal, and as is the professional production of a statuary or sculptor only." If such definition is applicable, then it is further contended by the importers that this statue is nevertheless "wrought by hand * * * from metal," and is the professional production of a statuary or sculptor within the meaning of said paragraph 454.

As to the question whether the term "statuary" in section 3 and the French reciprocity agreement is subject to the definition found in paragraph 454, we say this question has been passed upon by the Circuit Court of Appeals in the Second Circuit in the case of Richard v. U. S., 158 Fed. 1019, 86 C. C. A. 671, T. D. 28,601, affirming the decision of the Circuit Court in 151 Fed. 954, T. D. 27,948, and by the Board in Havemeyer's Case, G. A. 5,286, T. D. 24,247. These decisions specifically deny the contention of the importers in this case. We therefore overrule the protests on this claim.

There then remains the question as to whether the piece of statuary here involved was "wrought by hand * * * from metal" and was the professional production of a statuary or sculptor only. Considerable testimony has been taken, but none of it shows any unusual method in the production of this bust. The bust itself was not in evidence; neither was any one brought before us who had seen its production. For the purposes of this case it must be considered as a piece of ordinary bronze statuary, sometimes termed "commercial statuary," produced by casting from a model made in some

plastic material under the hand of the artist. This kind of statuary has been the subject of decisions both by the Board and the courts in various cases. The importers in their contention rely on the case of United States v. Tiffany, 160 Fed. 408, 87 C. C. A. 360, T. D. 28,717, as modifying all previous decisions on this subject. Paragraph 454 of the act of 1897 is the same as paragraph 465 of the act of 1890 (Act Oct. 1, 1890, c. 1244, § 1, Schedule N. 26 Stat. 602), under which last-named act the Circuit Court of Appeals of the Second Circuit passed upon cast bronze statuary in the case of Tiffany v. United States, 71 Fed. 691, 18 C. C. A. 297.

We are of the opinion that this decision should govern in the case at bar, and that the case of United States v. Tiffany, supra, is distinguished. In the case of Tiffany v. United States, supra, the court used the following language: "The artist's handwork in preparing the clay model is in no sense the work which transforms the metal itself into the statue, and the fact that some 'touching up' or smoothing or chasing is put upon the casting after it comes from the mold is not sufficient to entitle it to classification as statuary wrought by hand from metal, especially in view of the testimony of appellants' witness that there are bronze statues made from metal, not by casting, but by beating. The amendment was inserted to accomplish a purpose, and its language is so plain and unambiguous that a construction which would eliminate it cannot be adopted. It manifestly excludes from the provisions of paragraph 465 of the act of 1890 all metal statuary which is not wrought by hand from the metal, and statuary which is substantially made by castings is not so wrought, although it may be afterwards surface-finished by workman or artist."

The case (United States v. Tiffany, 160 Fed. 408, 87 C. C. A. 360, T. D. 28,-717, supra) relied upon by protestants, is distinguished from the last above-mentioned case by the court in this language: "After the various parts have been cast, the important work, that which gives it its distinctive personal character, is done by hand; the sculptor carefully going over the figure and making the alterations and changes necessary to embody his ideas. It is this artistic feature, this expression to the sculptor's intention, which gives value to the statue, not the price paid for the bronze and ivory. No one but a sculptor of the highest merit could have cut the ivory face so symbolic of the horrors of war, or fashioned the cloak which is considered one of the most wonderful pieces of bronze in existence. In short, the statue was the work of Gérome, and to its minutest details he gave the best work of his brain and hand."

Further distinguishing the two cases, the court says: "It appeared in that case (Tiffany v. U. S., 71 Fed. 691, 18 C. C. A. 297) that the government's contention was that the importations were known as 'commercial bronzes'; some of them being reproduced many times, and none of them receiving more than perfunctory attention from the original sculptor. There was also evidence that there were bronze statues made, not by casting, but by hand 'beating.' In the present case there is no such testimony, and, as we have before seen, the entire work, from the original conception until the last touch was placed upon the statue, was under the direct and constant supervision of Gérome."

In the case at bar there is much testimony which clearly shows, we think, that repoussé work, or work produced by hammering and entirely wrought by hand, has been known from a remote time, specimens of which are cited, showing that they have been produced even down to the present, to wit, the Japanese figure of an ape (Exhibit 6), the statue of St. Sebastian (Exhibit 7), the figure of Charles II (Exhibit 8), the Greek Chariot (Exhibits 10, 11, and 12), and the Statue of Liberty (Exhibits 13 and 14). We do not think it is shown that this method of producing bronze or metal statues by hand has been very extensively used. Still we are of the opinion, in view of the ease with which commercial bronze statuary may be produced by the hand of a skilled artisan, entirely independent of the artist, that it was intended to prohibit the importation under said paragraph 454 of such pieces of casting, thereby protecting the bronze foundries and the domestic industries where great quantities of labor are employed and large capital is invested.

In the absence of testimony to the contrary, we assume that this piece

of statuary was produced in the ordinary way, and that practically all the hand work upon it was done by the artisan at the foundry, which hand work consists of removing seams and protuberances left by the imperfections of the mold, and perhaps chasing or smoothing the surface of the figure, which in no way changes the form after it is taken from the matrix or mold. In fact, the efficiency of the foundry is determined by the degree of resemblance that the metal statue bears to the model, and, should the statue vary to any extent, it would be rejected as an imperfect casting. From the testimony in this case it does not appear to us that an artist whose business it is to work upon plastic material would feel competent to change the figure, facial expression, or dimensions after the metal casting had been made. The testimony of founders and workmen who have been in the business for years satisfies us that in this class of statuary the artist has very little, if anything, to do with the statue after he has produced the model. We therefore hold that the piece of statuary involved herein is not "wrought by hand * * * from metal."

In view of this conclusion, it becomes unnecessary to discuss the only remaining question, to wit, whether this bust is the professional production of a statuary or sculptor.

The protest is overruled, and the decision of the collector will stand.

Curie, Smith & Maxwell (W. Wickham Smith, of counsel), for importers.

D. Frank Lloyd, Asst. U. S. Atty.

PLATT, District Judge. Decision affirmed.