(C. D. 912)

J. Thannhauser *v.* United States

United States Customs Court, Third Division

(Decided February 7, 1945)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Harold L. Grossman*, special attorney), for the defendant.

Before Cline, Keefe, and Ekwall, Judges

Cline, Judge: This suit, arising at the port of New York, was brought by the plaintiff for the purpose of recovering from the United States the duty assessed on certain bronze statuary. The invoice describes 47 statues and, from the notations of the customs officers thereon, it appears that nine of the figures were returned free of duty under paragraph 1807 of the Tariff Act of 1930, as original sculptures, replicas, or reproductions, the remainder being assessed with duty at 20 per centum ad valorem under paragraph 1547. The invoice shows also the names of the sculptors who created the articles. One item contains the words "by french artist Ganguin" and two are followed by the words "by french artist Maillol," while the remainder contain the words "by french artist Degas."

The collector assessed also a tax of 3 cents per pound on the articles under the Revenue Act of 1932, due to the copper content therein, but the plaintiff does not contest that assessment.

The pertinent parts of the provisions involved read as follows:

Par. 1547. (a) Works of art, including * * * statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50, * * * all the foregoing, not specially provided for, 20 per centum ad valorem.

Par. 1807. * * * original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional pro-

ductions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only  *  *  *.

At the trial four of the statues covered by the shipment were admitted in evidence and marked "Exhibits 1 to 4," respectively. Subsequently, by agreement of counsel, these four exhibits were withdrawn, the plaintiff agreeing to produce them before the court if requested to do so. The plaintiff produced photographs of various figures, and they were marked "Collective Illustrative Exhibit A." The plaintiff's witness stated that there were 38 photographs in the exhibit, but an examination thereof shows that there are 24.

The record contains the testimony of four witnesses, three called by the plaintiff and one by the defendant. They are all art dealers and have had considerable experience and training in sculptures and works of art. The testimony of all of the witnesses is in substantial accord with respect to the history of the items invoiced as "by french artist Degas," but no evidence was introduced concerning the three items described on the invoice as by Ganguin and by Maillol. It appears from this testimony that the artist Degas died in 1916 and his heirs, who found 73 models in wax in his studio after his death, entered into a contract with one Hebrard, a professional founder or caster of statuary, to cast the wax models in bronze, and 22 sets of each of the models were cast by him, using the cire-perdue process. These statues were marked with the name of the artist Degas, with the name of the founder Hebrard, with a figure (from 1 to 73) signifying the model cast, and with letters ranging from A to T, the letters indicating the order in which the castings were made. The uncontradicted testimony indicates also that the first castings of each set were given to the heirs of Degas and the second castings were given to the founder Hebrard or his family.

Government witness, Andre Weil, who was in charge of the works of art in the estate of Degas, testified that the first castings in the series were marked with the letters "HER," which is an abbreviation of the French word "Heritiers," and is translated into English as "Heirs."

The witnesses were not in agreement as to what constitutes original bronze statuary. The three witnesses called by the plaintiff were of opinion that all of the 22 figures of each subject were originals, because they were cast from the original wax models, while Government witness Weil was of opinion that the wax models were the originals and all of the castings were replicas.

Witness Weil was shown exhibit 4, which is one of the four figures introduced in evidence, and asked if it was an original Degas bronze.

He answered that "it depends what you mean by an original Degas bronze." When asked what he meant by an original, he said:

A. I mean an original bronze, a bronze executed during the lifetime of the artist, and that the artist has provided himself for the execution of the work and even has touched the work himself with a chisel or something like that to correct the shape of the bronze. That is what I call an original bronze, like a bronze by Houdon, and many of them. But in my opinion in this case I would say this bronze would be of the original edition, that is to say, Hebrard edition of works after Degas. It is an original edition of the works by Degas.

Judge EKWALL. Of the 22?

The WITNESS. Yes. But I don't mean it is an original bronze, because the original bronze is gone. The original bronze was the wax.

Judge CLINE. There wasn't any original bronze?—A. No; it was the cast.

The attention of the witness was directed to the marking 9 over D on exhibit 4 and he was asked what the letter would indicate. He said:

A. Well, if my opinion is correct, that is one for the family, one for Hebrard, letters "A," "B," "C," "D." That is sixth if my opinion is correct, you know.

On cross-examination, the witness testified that the Degas figures which he sold to the museums were all cast after the death of Degas. When asked if the sculptures of the same character as exhibits 1 to 4 were exhibited as sculptures "after Degas" or "by Degas," he answered:

A. You know first original sketches were by Degas; not after. It was his own work. So I think that you can exhibit a work like that under the title "Bronze by Degas" because it was really, the sculpture was really his work. But on the other hand, the piece itself is not by Degas; it is by Hebrard.

X Q. What is your opinion as a dealer in art as to whether these are originals, those figures we have here today?—A. Well, I consider that these bronzes, if you call them original, are original as the same title as a set of the Louvre or family; but in my opinion they are not in any way an original by the artist.

The witness was asked further if the director of the Amsterdam Museum did not ask him to secure an original Degas bronze and he answered that he did and that he furnished the museum with a cast similar to the ones before the court.

The question as to what constitutes original bronze statuary has been the subject of decisions by the courts. In the case of *M. Knoedler & Co.* v. *United States*, 36 Treas. Dec. 63, T. D. 37898, G. A. 8229, the court passed upon the classification of a bronze statue produced by Rodin who was a professional artist or sculptor. The artist first made a model in terra cotta and from that model a plaster matrix was made and the bronze statue before the court was produced by the cire-perdue process, after which it was carved, remodeled, and improved by the artist. The court held that the bronze statue was an original.

In *Peter G. Thomson* v. *United States*, 63 Treas. Dec. 1258, Abstract 22904, the importation consisted of four busts of the importer in the same likeness. One was made of plaster of paris, two of bronze, and

one of marble, and all were produced by the same artist. The plaster model, the marble statue, and one of the bronze castings were admitted free of duty by the collector under paragraph 1704 of the Tariff Act of 1922, but duty was assessed on the second bronze casting on the theory that it was not the first or the second replica, the free entry of statuary in paragraph 1704 being limited to an original and two replicas. The court overruled the plaintiff's protest. The decision of the court is summarized in the abstract cited as follows:

* * *. Inasmuch as paragraph 1704 specifically limits its application to one original and two replicas, and as there was no competent evidence introduced to establish that the bronze bust in question was an original production rather than a third replica, the protest was overruled.

It will be noted that paragraph 1807 provides for free entry of "original sculptures or statuary, including not more than two replicas or reproductions of the same." That provision does not suggest that the replicas or reproductions for which free entry is granted shall be the first and second replicas or reproductions. It may cover any two of the replicas or reproductions produced. In our decision in *H. A. Whitacre, Inc.* v. *United States*, 6 Cust. Ct. 403, C. D. 504, the last paragraph of the syllabus reads:

Held further that the provision for "replicas or reproductions" in paragraph 1807 is limited to first or second copies made of the same materials and in the same size as the originals and produced by the artist or artists who created and made the originals.

It is evident that there is an error in this statement in the omission of the word "not" after the word "is" in the second line and the words "but applies to any two replicas or reproductions" after the word "copies." In conformity with the decision, the paragraph should read:

Held further that the provision for "replicas or reproductions" in paragraph 1807 is not limited to first or second copies but applies to any two replicas or reproductions made of the same materials and in the same size as the originals and produced by the artist or artists who created and made the originals.

We know of no decision of this court or of the Court of Customs and Patent Appeals which holds that the replicas or reproductions must be first or second.

The question arises here as to whether the statues in the instant shipment are originals, replicas, or reproductions, since they were made, after the death of the sculptor who produced the original models, by a founder who was not shown to be an artist or a sculptor. A discussion involving that subject is found in *United States* v. *Downing & Co.*, 6 Ct. Cust. Appls. 545, T. D. 36197, at page 551. The court said:

* * *. In the common acceptation of the term, a work to be entitled to the characterization of sculpture must be the production of a professional sculptor. It must be a work that embodies professional skill, taste, touch, and artistic

conception, appealing not only to the eye but the emotions as well, and although "sculptures" may include under the statute copies of recognized works of that art, yet such copies must possess the same qualities or characteristics, and, whether an original or a copy, must be made either by or under the supervision of a professional sculptor. It is unbelievable that a sculpture in the common understanding can be produced by one who has neither embraced that profession nor has artistic skill, taste, touch, or ability in exercising it.

Indeed, to hold otherwise would seem to result in a conflict of meaning or confusion of terms. A sculpture must obviously be the production of a sculptor and a sculptor would naturally be understood to mean a person who was in whole or in part engaged in the practice of that profession. To do this successfully (and without some degree of success one would not long be so engaged) it follows that the sculptor must have had instruction and experience in the art. To be successful to the end that his productions might attain the distinction of works of art it would further seem indispensable that he should possess artistic conception, taste, sense, and skill, together with the requisite ability to reproduce or present the same to the beholder or at least to see that others did it for him. In other words, a sculptor, in the common meaning of the word, is not a skilled artisan, but a person who is capable of making or who does make sculpture his profession.

The use of the word "copies" in paragraph 376 [Act of 1913] in connection with the words "replicas or reproductions" does not justify or require any different conclusion.

"Replica" is by lexicographers generally in substance defined to be a duplicate executed by the artist making the original and to be considered as an original. Sometimes it is expressly related to works of art. (See Century and Standard dictionaries.)

The word "reproduction" signifies a thing which is reproduced, as well as the act of reproduction, and appears more often to refer to a function of living organisms. See discussion under "synonyms" following the word "duplicate" in the Standard Dictionary, wherein, among other things, it is said "a replica is a copy of a work of art by the maker of the original," and generally that "a copy is as near like the original as the copyist has power to make it; a duplicate is exactly like the original; * * * we may have an inaccurate copy but never an inaccurate duplicate."

The word "copy" is given many definitions. Among its synonyms are "reproduction," "imitation," "duplicate," and it evidently has a wider scope than is generally applied to "reproduction," but may not correctly include "replica." It also means that which is used as a model.

The merchandise in the *Downing & Co.* case, *supra,* was composed of marble and consisted of a copy, made by a sculptor, of an antique temple. The court held that the importation was not a work of art or a sculpture, or a copy of a sculpture within the meaning of those terms in paragraph 376 of the Tariff Act of 1913 and reviewed the decision in *Merritt* v. *Tiffany,* 132 U. S. 168, wherein the question involved was whether bronze figures were sculptures. Some of the figures were produced by a founder from original models in clay or plaster which were conceived and designed by an artist or sculptor, while in other cases the original models were made by an artist or sculptor and the castings were edited by him or produced under his immediate personal supervision. In the trial court the case was tried before a jury which found that the bronze statues were all

sculptures and the court so held, but the United States Supreme Court reversed the decision below and remanded the case for a new trial on the ground that the trial judge erred in refusing to instruct the jury that "If they find from the evidence that the imported articles were made, not by professional sculptors or statuaries, or by their assistants under their direction, but were made by skilled workmen or mechanics in the employ of the manufacturer, then their verdict should be for the defendant."
The court said:

This instruction the court refused, to which refusal counsel excepted. In its ruling in this respect we think the court erred. Under the instruction the jury might possibly have found that some of the articles, like the Roman Gladiators, were the productions of a statuary or a sculptor, within the meaning of the statute, while excluding others.

The figures in the instant case were not shown to have been cast by an artist or sculptor, or by an assistant under the sculptor's immediate supervision, and, following the rules laid down by the courts in the cases above cited, we find that the statues herein involved are neither originals nor replicas or reproductions of sculptures. The protest is overruled. Judgment will be rendered in favor of the defendant.