(C. D. 1606)

ANGELA GREGORY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 8, 1954)

*Philip Stein (Marjorie M. Shostak* of counsel) for the plaintiff.
*Warren E. Burger,* Assistant Attorney General *(Mollie Strum,* trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: This is a protest against the collector's assessment of duty on a bronze statue imported from France at 20 per centum ad valorem under the provision in paragraph 1547 (a) of the Tariff Act of 1930 for "statuary, sculptures, or copies, replicas, or

reproductions thereof," not specially provided for. It is claimed that the article is entitled to free entry under the provision in paragraph 1807 for "original sculptures or statuary, including not more than two replicas or reproductions of the same," or, in the alternative, under paragraph 1773 as sculpture imported for use as models or for art educational purposes, or under paragraph 1809 as a work of art, imported for exhibition at a fixed place by an institution established for the encouragement of the arts and not intended for sale.

The pertinent provisions of the tariff act are as follows:

PAR. 1547. (a) Works of art, including * * * (2) statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50 * * * all the foregoing, not specially provided for, 20 per centum ad valorem.

PAR. 1807. * * * original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting," "drawing," "sketch," "sculpture," and "statuary" as used in this paragraph shall not be understood to include any articles of utility or for industrial use, nor such as are made wholly or in part by stenciling or any other mechanical process; * * *. [Free.]

PAR. 1773. Statuary and casts of sculpture for use as models or for art educational purposes only; * * *. [Free.]

PAR. 1809. Works of art, collections in illustration of the progress of the arts, sciences, agriculture, or manufactures, photographs, works in terra cotta, parian, pottery, or porcelain, antiquities and artistic copies thereof in metal or other material, imported in good faith for exhibition at a fixed place by any State or by any society or institution established for the encouragement of the arts, science, agriculture, or education, or for a municipal corporation, * * * and not intended for sale nor for any other purpose than herein expressed; but bond shall be given, under such rules and regulations as the Secretary of the Treasury may prescribe, for the payment of lawful duties which may accrue should any of the articles aforesaid be sold, transferred, or used contrary to this provision, and such articles shall be subject at any time to examination and inspection by the proper officers of the customs: * * *. [Free.]

At the trial, the case was submitted upon an agreed statement of facts, and an affidavit of Cleopatre Bourdelle, which, together with other documents, was received in evidence as plaintiff's collective exhibit 1. The facts may be summarized as follows: The article in question is a bronze statute entitled "Hercules, The Archer," purchased and imported by or for the Isaac Delgado Museum of Art of New Orleans, which is owned and maintained by the State of Louisiana. It has been retained in the Delgado Museum since its entry and is not intended for sale or any purpose other than that for which

such museums are usually established in the United States. It is the 10th casting of an original sculpture created in 1909 by the late Antoine Bourdelle, a recognized professional sculptor of France.

Antoine Bourdelle made two original statues of Hercules, neither being a replica of the other. Only three proofs have been cast of the first composition, none of which has been sent to the United States. The second composition was limited by the artist to 10 proofs. Ten bronze castings have accordingly been made, in the same size as the original, some by the founder Rudier and some by the founder Hohwiller. Mme. Bourdelle, widow of the sculptor, states in her affidavit that she is a recognized professional sculptress and is at present curator of Atelier Antoine Bourdelle, an official museum of France. During the lifetime of her husband, she customarily and invariably supervised the casting of his works, and the founders were aware that their work would be verified by her or her husband and that no imperfection would be tolerated. The casting involved herein was made in 1947, after the death of Antoine Bourdelle, but was made from the same model and under the same supervision as the other proofs cast at an earlier date and is identical in every pertinent detail with the other nine proofs. It was cast by the founder Hohwiller, a first-class founder of great monuments of France.

Mme. Bourdelle states that she has sent to the United States only two castings of the Hercules created by her husband, one to the Metropolitan Museum of Art in New York City, and the other, the one involved herein, to the Isaac Delgado Museum of Art in New Orleans. The eight other castings are located in countries other than the United States.

The first question before us is whether the imported statue is entitled to free entry under paragraph 1807 of the Tariff Act of 1930. Under the applicable provision thereof, the article must be an original sculpture or one of not more than two replicas or reproductions of the same, the professional production of a sculptor only, and not an article of utility or for industrial use. From the record, it appears that the statue herein was produced from a model created by a recognized professional sculptor; that it was cast after the death of the sculptor, but under the supervision of his wife, a professional sculptress; that it was the 10th casting made, but the second imported into the United States; and that it is not an article of utility or for industrial use. Plaintiff claims that it is, therefore, entitled to free entry under paragraph 1807. Defendant contends, on the contrary, that the statue is not covered by said paragraph, on the ground that it was produced after the death of the sculptor who created the original and on the further ground that only the first and second replicas or reproductions produced are included under paragraph 1807, whereas the imported article is the tenth.

Two questions of construction are involved herein: First, whether the "reproductions" provided for in paragraph 1807 must be the work of the sculptor who created the original, and, second, whether such reproductions must be the first or second produced.

The provisions now found in paragraph 1807 and paragraph 1547 of the Tariff Act of 1930 first appeared in the Tariff Act of 1913 (paragraphs 652 and 376). Under these provisions, free entry is granted to *original* works of art, but other artistic objects, including copies, are dutiable. In the case of statuary, however, two replicas or reproductions are also free of duty. It is, therefore, necessary to determine what is meant by "replica" and "reproduction," as distinguished from "copy."

It was held under the Tariff Act of 1913 in *Wm. Baumgarten & Co.* v. *United States*, 29 Treas. Dec. 67, T. D. 35597, that a sculpture, consisting of a group of human figures executed in marble by modern artists, a copy of part of a fountain made by Giovanni di Bologna in the 16th century, was not entitled to free entry under paragraph 652 as a replica or reproduction of an original sculpture. The court stated that a replica must be a duplicate of the original produced by the same artist and that the word "reproduction" covered the same class of articles as that described by the term "replica."

In *United States* v. *Downing & Co.*, 6 Ct. Cust. Appls. 545, T. D. 36197, it was held that parts of a marble temple were not classifiable as "sculptures" since there was no evidence that they were the professional productions of sculptors. In the course of the opinion, the court referred to definitions of the word "replica" as a duplicate executed by the artist making the original, of the word "reproduction" as a thing reproduced, and of the word "copy" as a thing as near like the original as the copyist has the power to make it. The court added that the word "copy" has a wider meaning than "reproduction," but may not correctly include "replica." The court did not, however, attempt to define the exact scope of the words "copy" and "reproduction."

See also *United States* v. *Twenty-Five Pictures*, 260 Fed. 851; *H. A. Whitacre, Inc.* v. *United States*, 6 Cust. Ct. 403, C. D. 504; *J. Thannhauser* v. *United States*, 14 Cust. Ct. 62, C. D. 912.

In none of these cases was the exact question now before the court presented, namely, whether the free entry provisions of paragraph 1807 or its predecessors covered a casting made from a model created by a professional sculptor, but cast after his death under the supervision of another sculptor. Only in the *Thannhauser* case was a sculpture produced by casting involved and there the casting was not done by or under the supervision of a sculptor. While some of the cited decisions state that a "replica" is a duplicate made by the same artist who created the original and that the word "reproduction"

has the same meaning, we cannot assume, without further examination, that Congress used words redundantly or unnecessarily. *Stephens v. Cherokee Nation*, 174 U. S. 445; *United States* v. *Andrews Co.*, 15 Ct. Cust. Appls. 412, T. D. 42589; *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714; 50 American Jurisprudence, section 359.

These words were used in reference to sculptures and statuary. Sculpture has been created traditionally in several ways: By carving, from marble, stone, alabaster, or wood; by casting in bronze or other metal or substance; and by modeling in clay or wax. The Encyclopedia Americana, volume 24, page 458; Collier's Encyclopedia, volume 17, page 430; *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, T. D. 36309. These types were specifically provided for in paragraph 1807 and its predecessors. It seems to us that in using the word "reproduction" Congress had in mind the method of producing sculptures by casting. By that method, a model first made in a soft substance is afterwards cast or reproduced in a more permanent material. It is actually the model which comes from the hand of the sculptor and upon which his individual conception is stamped, the statue in bronze or other metal or substance being but the final embodiment of his idea in durable material. The final form is achieved by making a mold from the model and pouring the molten metal therein. See description of methods of casting in Encyclopaedia Britannica, volume 20, page 229, and Collier's Encyclopedia, volume 17, page 431.

In *United States* v. *F. G. R. Roth*, 22 C. C. P. A. (Customs) 293, T. D. 47347, in a case involving stoneware figures produced from molds made from models created by the sculptor, it was stated that "the fact that appellee did not personally make the molds, or do the baking or the glazing, is immaterial, for these operations were merely for the purpose of placing in an enduring form the conception of the sculptor fully developed in the models from which the figures were cast." There was evidence that practically the same process would be used in casting in bronze, except that there would be no baking. We conclude that for classification under paragraph 1807 all of the casting operations do not have to be done personally by the artist or sculptor.

It appears from the affidavit of Mme. Bourdelle that even during the lifetime of her husband, it was she who supervised the casting of his works. Since Antoine Bourdelle was a sculptor of some renown (The Columbia Encyclopedia, page 235; Collier's Encyclopedia, volume 3, page 627), it is evident that such method is acceptable in the artistic world and that the final sculpture is, nevertheless, considered the professional production of the sculptor who made the model. (See also discussion of modern sculptural methods in The

Encyclopedia Americana, volume 24, page 464.) Reproductions produced in the same way, must, therefore, be reproductions of original sculptures produced by professional sculptors.

While lexicographers agree that the word "replica" means a duplicate or copy made by the artist who made the original, the word "reproduction" does not have that limitation. Because of the method by which one class of statuary is produced, we believe that Congress used the word "reproductions" to cover sculpture which was not, strictly speaking, a replica of the original, but which was more than a copy, since it embodied all of the artistic conception of the sculptor, although the casting and verification of the final form may have been done by or under the supervision of another artist.

We conclude, therefore, that the word "reproduction," as used in paragraph 1807 of the Tariff Act of 1930, and its predecessors, refers to sculptures which have been produced by casting and that the term includes castings made from a model created by a professional sculptor, where the casting has been done by or under the supervision of a professional sculptor, either the one who created the model or another.

The next question is whether such reproduction must be the first and second produced or may be one of any two imported into the United States. The statute itself uses the words "not more than two replicas or reproductions of the same." In construing these words, it is to be kept in mind that the paragraph was intended primarily to cover original works of fine art and not commercial objects produced in great numbers. *United States* v. *Downing & Co., supra; Wm. S. Pitcairn Corp.* v. *United States,* 39 C. C. P. A. (Customs) 15, C. A. D. 458. Where 10 or 100 reproductions are made, the sculptures become articles of trade, which, while still works of art, do not belong to that class of fine art of a rare and special genius which is covered by paragraph 1807. Therefore, only the first and second replicas or reproductions are entitled to free entry under that paragraph. This conclusion is supported by the administrative practice since the enactment of the Tariff Act of 1913, and, except for one case, hereinafter mentioned, by judicial decision.

Shortly after the Tariff Act of 1913 went into effect, the Treasury Department concurred in an interpretation of paragraph 652 which limited the free entry of sculpture or statuary to "the original and to two replicas or reproductions thereof." (25 Treas. Dec. 635, T. D. 33985.) Under the Customs Regulations of 1915, it was required by article 394 that invoices covering works of art claimed to be free of duty must show whether the same were originals, replicas, reproductions, or copies. Subsequently, the Treasury Department concurred in a recommendation of a conference of collectors that one of the proofs to be required under paragraph 652 be a certificate of the artist who executed the article, showing whether it was the original or the first

or second replica. (30 Treas. Dec. 618, 626, T. D. 36330 (63).) See also 31 Treas. Dec. 282, T. D. 36725.

Under the Tariff Act of 1922, article 422 of the Customs Regulations of 1923, as originally promulgated, provided only that invoices covering works of art claimed to be free of duty must show whether the same were originals, replicas, reproductions, or copies. However, this was subsequently amended to provide that there also be produced a certificate of the artist who executed the article, showing whether it was an original, or, in the case of sculpture, a first or second replica. (48 Treas. Dec. 583, T. D. 41263.) This latter requirement has been included in regulations issued under the Tariff Act of 1930. Article 445, Customs Regulations of 1931; article 452, Customs Regulations of 1937; section 10.48 (b) (1), Customs Regulations of 1943.

Long-continued administrative practice followed by subsequent legislation making no change in the language of a statute is a persuasive and often a controlling factor. *Washington Handle Co.* v. *United States*, 34 C. C. P. A. (Customs) 80, C. A. D. 346; *Furida, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 321, T. D. 47361. In the instant case, the administrative practice has continued from 1916, at least (T. D. 36330), and two subsequent tariff acts have been enacted without a change of language. The administrative construction is, therefore, entitled to great weight.

In addition, the Court of Customs and Patent Appeals held in *United States* v. *F. G. R. Roth, supra*, that the imported articles were entitled to free entry as "original sculptures and first and second replicas thereof, produced by appellee, a professional sculptor."

In *H. A. Whitacre, Inc.* v. *United States, supra*, it was claimed that if the imported statues were not originals, they were first or second replicas or reproductions entitled to free entry under paragraph 1807. The court said (p. 405):

* * * This contention is not supported by the evidence because there is no testimony in the record tending to show that the imported statues were the first or second productions from the plaster of paris models. For all that appears in the record, the person who made the marble statues may have produced a dozen duplicates.

However, in a later case, *J. Thannhauser* v. *United States, supra*, the court stated that there had been an error in the headnote in the *Whitacre* case and that the provision in paragraph 1807 was not limited to the first and second replicas or reproductions but covered any two of the replicas or reproductions produced. We find on further examination of these cases that the headnote in the *Whitacre* case correctly expresses the thought in the body of the opinion but that it was not necessary for the court to decide in either case whether the articles were first or second replicas or not.

In our view, the statue involved herein is not entitled to free entry under the provision in paragraph 1807 for "original sculptures or statuary, including not more than two replicas or reproductions of the same," since it is not a first or second replica or reproduction.

Plaintiff has made alternative claims for free entry under paragraphs 1773 and 1809. Since the record herein indicates that the statue was imported for exhibition purposes, and not for art educational purposes only, it is not entitled to free entry under paragraph 1773. There is no evidence that the bond required under paragraph 1809 has been furnished; consequently, free entry cannot be granted under that paragraph.

We hold, on the record presented, that the statue is properly dutiable as assessed by the collector at 20 per centum ad valorem under the provision in paragraph 1547 (a) of the Tariff Act of 1930 for "statuary, sculptures, or copies, replicas, or reproductions thereof," not specially provided for.

The protest is overruled and judgment will be rendered for the defendant.