(C. D. 1670)

WARD EGGLESTON GALLERIES / F. L. KRAEMER AND CO. } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 4, 1955)

*Sharretts, Paley & Carter* (*Amos B. Sharretts* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Harold L. Grossman* and *Dorothy C. Bennett*, trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on a bronze sculpture, known as "Roger and Angelique," at 10 per centum ad valorem under paragraph 1547 (a) of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T. D. 52373, and the President's proclamation of May 13, 1950, T. D. 52476, under the provision for "Works of art, not specially provided for: Statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50." It is claimed that the article is entitled to free entry under paragraph 1807 of said tariff act as an original sculpture or statue.

The pertinent provisions of the tariff act are as follows:

PAR. 1547 (a)  [as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T. D. 52373, and the President's proclamation of May 13, 1950, T. D. 52476].

Works of art, not specially provided for:

Statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50_____ 10% ad val.

PAR. 1807.  * * * original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting," "drawing," "sketch," "sculpture," and "statuary" as used in this paragraph shall not be understood to include any articles of utility or for industrial use, nor such as are made wholly or in part by stenciling or any other mechanical process; * * *.  [Free.]

It was conceded at the trial that the statue was a work of art, executed under the supervision of one Barye,[1] a sculptor, and that it was an ornamental object.

Ward Eggleston, called as a witness by the plaintiffs, testified as follows: He has had his own galleries for the sale of works of art for 14 years, has given exhibitions of paintings, and has helped form collections in museums. Previously, he had studied sculpture at the Pratt Institute and had worked at it for about 9 years. He has attended exhibitions at the Museum of Modern Art and the Whitney Galleries

---

[1] Apparently, this is Antoine Louis Barye, a French sculptor (1796–1875), although he is referred to in the testimony as "Bare."

and has been abroad for the past 5 years. He was commissioned several times by Richard Norton, Jr., to purchase works of art for a museum at Shreveport, La. During the course of his studies, he cast 6 to 12 small pieces himself by sand-casting and by the cire-perdue, or lost wax method.

The witness testified that he was familiar with the statuary described on the invoice herein, as it has been on display at his galleries since the date of importation. Photographs of the sculpture, which consists of a group of figures, were introduced into evidence as plaintiffs' collective exhibit 1. The base of the statue represents a dolphin arising from the sea. Fastened to this is a winged horse, called a hippogriff by the witness, on which is riding a knight carrying a maiden. According to the witness, the group represents the mythological story of Roger and Angelique, in which the damsel had been put into the ocean for the sea horses to destroy. He said that the piece is about 24 inches in length and the wing spread (width) is about 18 inches.

From an examination of the sculpture, the witness was of the opinion that it had been sand-cast, except the base, which had been cast by the cire-perdue process. He explained the sand-casting method as follows: The original work is done by the artist in plaster or terra cotta. The model is then packed on the outside with fine wet sand, and molds are made of the various parts of the work. After casting, the parts are fastened together with bronze pins by the sculptor, and the sculptor touches up the work with his file. The witness pointed out that there were file markings on the statue involved herein; that the fine details, such as the hawk, which is part of the helmet, and the nails on the fingers, were put in by the artist himself after the work came out of the cast. In the opinion of the witness, the sculpture was an original because of the craftsmanship that had gone into the finished product.

On cross-examination, the witness testified that he had made a study of Barye's works, had handled a great many of them, and was familiar with their dispersal throughout the world. He stated that the Metropolitan Museum of Art has on exhibition a statue of Roger and Angelique, by Barye, which differs only slightly from that involved herein. The difference is in the patina or coloring; in other respects, the two are identical and, in his opinion, were cast from the same mold. He explained that Barye was well known for the type of coloring he put on his objects; that very few of them were similar. Barye had developed the famous green bronze, which is a finish put on to give the object a certain texture, and had developed a very fine chocolate-colored bronze, which is also a finishing on the surface. The witness knew of several other statues of Roger and Angelique:

One owned by a Mr. Walters of Baltimore, another by one James F. Sutton, and a third in the Corcoran Galleries in Washington. He said that all of these were cast from the same mold and were worked over by the sculptor Barye, but it was not possible to determine which was the first statue cast from the mold.

The witness stated that every time a mold is used, it is damaged in some way and has to be cleaned and worked over to make the next casting as close to the original as possible. He said that the sculptor Barye did all of these things personally and that all of the statues were originals, in the sense that the cast was reworked, the pouring and the finishing of the imperfections were worked on by the artist, and an individual touch was given to each by the coloring. He admitted, however, that, basically, the artist's original conception, the model from which the work was done, remained the same.

Since it has been agreed that the statue herein is a work of art executed under the supervision of a sculptor and that it is an ornamental object, the only question before us is whether it is to be classified under paragraph 1807 under the provision for "original sculptures or statuary, including not more than two replicas or reproductions of the same." It is plaintiffs' claim that the statue is an original, whether cast first, second, or fifth, on the ground that it is not a duplicate of any of the others but is an individual treatment of the same theme, similar in shape, and cast from the same mold, but with the sculptor's professional craftsmanship and originality in the fine details and finish.

In the recent case of *Angela Gregory* v. *United States*, 32 Cust. Ct. 228, C. D. 1606, we discussed the ways in which sculpture has traditionally been created. We pointed out that where statuary is produced by casting it is the model made in a soft substance that comes from the hand of the sculptor and upon which his original conception is stamped and that the statue in bronze or other metal is but the final embodiment of his idea in durable material. The first casting from the model is regarded as the sculptor's professional production and is the "original" within the meaning of paragraph 1807; additional castings are "reproductions." *Tiffany* v. *United States*, 9 Treas. Dec. 1056, T. D. 26480; *United States* v. *F. G. R. Roth*, 22 C. C. P. A. (Customs) 293, T. D. 47347; *Angela Gregory* v. *United States, supra.* Such castings often are retouched by the sculptor. *United States* v. *Tiffany*, 160 Fed. 408, T. D. 28717; *M. Knoedler & Co.* v. *United States*, 36 Treas. Dec. 63, T. D. 37898.

In the instant case, it is clear that the sculptor's original artistic conception was that stamped upon the model. According to the witness, the work was cast in parts, which the sculptor put together and upon which he placed certain finishing touches. The only difference between the statue before us and the others cast from the same mold

was in the coloring, a finishing on the surface. There is no evidence in the record that the work of the sculptor on this statue made any significant change in his original artistic conception, as embodied in the model. In our view, any retouching, difference in coloring, or other work on a sculpture which does not affect the original idea of the artist does not make a second, third, or fifth casting an "original," within the meaning of the statute.

In paragraph 1807, Congress "sought to protect the aesthetic taste of peoples against commercialization of that fine art which is the product of a somewhat rare and a very special genius." *Wm. S. Pitcairn Corp.* v. *United States*, 39 C. C. P. A. (Customs) 15, 34, C. A. D. 458. It has long been recognized that there comes a time when replicas, reproductions, or copies cease to be art by reason of their numbers and become objects of trade. *United States* v. *Downing & Co.*, 6 Ct. Cust. Appls. 545, 553, T. D. 36197; *Wm. S. Pitcairn Corp.* v. *United States, supra,* page 33. Therefore, free entry under paragraph 1807 is limited to the original sculpture and no more than two replicas or reproductions. To hold that a statue cast from the same mold as other statues is an "original," because of retouching by the artist or a difference in color due to surface finishing, would circumvent the purpose of the statute.

We hold, therefore, that the within statue is not an "original," within the meaning of paragraph 1807, and, since there is no evidence that it was a first or second reproduction, it is not entitled to free entry under said paragraph. *Angela Gregory* v. *United States, supra.*

For the reasons stated, the protest is overruled, and judgment will be rendered for the defendant.