(C.D. 4131)

H. H. ELDER & Co.
FOREST LAWN Co. } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 23, 1970)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.

*William D. Ruckelshaus,* Assistant Attorney General (*Brian S. Goldstein* and *Andrew P. Vance,* trial attorneys), for the defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges

ROSENSTEIN, Judge: Plaintiffs contend that six different marble statuaries imported from Italy and assessed for duty at 10 per centum ad valorem under paragraph 1547(a)(2), Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52476, as "Works of art, not specially provided for", are entitled to entry free of duty under paragraph 1807(a) of said act, as amended by Public Law 86–262, either as original works of art or as one of the first ten replicas thereof.

The pertinent provisions of the Tariff Act of 1930 are as follows:

Paragraph 1547:

(a) Works of art including * * * (2) statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50, * * *.

Paragraph 1807(a), as amended, *supra:*

* * * original sculptures or statuary; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, metal, or other materials, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, alabaster, or from metal, or other material, or cast in bronze or other metal or substance, or from wax or plaster, or constructed from any material or made in any form as the professional productions of sculptors only, and the term "original", as used in this paragraph to modify the words "sculptures" and "statuary", shall be understood to include the original work or model and not more than ten castings, replicas, or reproductions made from the sculptor's original work or model, with or without a change in scale and regardless of whether or not the sculptor is alive at the time the castings, replicas, or reproductions are completed. The terms "painting", "mosaic", "drawing", "work of the free fine arts", "sketch", "sculpture", and "statuary", as used in this paragraph, shall not be understood to include any articles of utility or for industrial use, nor such as are made wholly or in part by stenciling or any other mechanical process; * * *.

The sole witness at the trial, Frederick A. Hanson, who is the architectural supervisor and a member of the Art Committee of Forest Lawn Memorial Park, testified that he had placed the order for the involved statuaries with Gino Varlecchi, a professional sculptor in Italy, now deceased. Varlecchi was commissioned to duplicate six statues at Forest Lawn. Photographs of the six statues to be copied were sent to him. As clay models of only two of the statues ordered,

"Goddess of Dawn" and "Childhood Tribute", could be located (in Forest Lawn's warehouse in Italy), Varlecchi had to make models of the others. Forest Lawn did not check on whether or not his clay models would correspond with the "originals" at Forest Lawn, which had also been made by Varlecchi, as they trusted him. The importations at bar are the only "reproductions" of the originals which have been commissioned by the cemetery.

To make a "reproduction" or "replica" (the witness used the words interchangeably), one can "point", that is, pantograph, directly from the original on to the marble block, or make a clay model and plaster cast, as Varlecchi did here, and point from the cast on to the marble. The first "Goddess of Dawn" was purchased from Varlecchi for Forest Lawn by the witness when he saw a plaster cast of it in Italy. There is, Hanson conceded, an "element of doubt" as to whether Varlecchi had produced the original of this statue. Exhibit 13, an English "translation sheet" relied upon by the witness in giving his testimony, which lists the original art guide numbers, the names and origins of the subject statues, and the dates they were first imported by Forest Lawn, notes that the "Goddess of Dawn" was first imported in 1947–8, that the original is by Forzani, and the "Reproduction by Varlechi [sic]".

The witness stated that the sculptor of the "original" "Childhood Tribute" was "supposed to be Rouranelli" who copied it from a tomb in Santa Croce Church. This piece, first imported by Forest Lawn in 1954, is described in exhibit 13 as "Reproduction by Varlechi [sic] from Original Santa Croce."

Another statue involved herein, denominated "Good Night", which was copied from a small plaster statue made by Dante Zoi, had been "blown up by the sculptor who did the one that we call the original one in Forest Lawn, from which this current thing [the importation] was duplicated." Hanson did not know who made the first statue for Forest Lawn; whether Zoi's model had ever been copied prior to Forest Lawn's purchase of it in the "40's"; or whether the first "Good Night" at Forest Lawn had been made by a pantograph directly from the model (the pantograph can "increase the size 100 percent"), or from a larger clay model of the original. This statue is described in exhibit 13 as "Original by Zoi" and "Reproduction by Andrini".

The aesthetic differences between the "original" six statues at Forest Lawn and their duplicates at bar are "very slight, if any", according to the witness. Nor is there a substantial difference between the four statues made from the new clay models produced by Varlecchi working from the photographs and their "originals" at Forest Lawn. Hanson explained: "There would be variations but, basically looking

at them a couple feet apart you would say, well, *they were the same statue.*" [Emphasis supplied.]

Antonio Buselli was the artist who originated the idea for the "Little Flower" statue herein; however, his models could not be located. (This statue, first imported in 1953–4, is simply listed on exhibit 13 as "original".)

The witness testified that it may have been Andrini who originated the "Perfume of the Flowers" statue, but he subsequently stated that Rouranelli had made the statue and sold it to Forest Lawn. This piece, first imported in 1926, is described in exhibit 13 as "Sculptor unknown" and "Reproduction by Rouranelli".

The "original" "Token of Love" statue was purchased by Forest Lawn from Varlecchi who Hanson "assume[s] * * * originated it." This article, first imported in 1948, is described in exhibit 13 as "Sculptor unknown" and "Reproduction by Varlechi [sic]".

It was stipulated that the six sculptures are not articles of utility or for industrial use.

Plaintiffs contend that the "Goddess of Dawn" and "Childhood Tribute" sculptures are each one of the first ten replicas or reproductions and that the other four statues are "original" within the meaning of paragraph 1807(a), as amended.

On the record herein, we find that plaintiffs have failed to establish that the collector's presumptively correct classification herein is erroneous or that their asserted claim is correct.

Reproductions have been held to refer to castings made from a model created by a professional sculptor. *Angela Gregory* v. *United States*, 32 Cust. Ct. 228, C.D. 1606 (1954). "The first casting from the model is regarded as the sculptor's professional production and is the 'original' within the meaning of paragraph 1807; additional castings are 'reproductions.'" *Ward Eggleston Galleries, F.L. Kraemer and Co.* v. *United States*, 34 Cust. Ct. 19, 22, C.D. 1670 (1955).[1] Therefore, defendant contends the statues at bar, which were pointed, and not cast, from models cannot be "reproductions".

Nor are they replicas, the government asserts, because that term has been held to refer only to a duplicate or copy made by the same artist who executed the original. See *United States* v. *Downing & Co.*, 6 Ct. Cust. Appls. 545, T.D. 36197 (1916); *Angela Gregory* v. *United States, supra.* Thus, defendant concludes, "Childhood Tribute" which was pointed by Varlecchi from a model made by Rouranelli, is excluded from classification as a replica, as is the "Goddess of Dawn"

[1] But note that, in *United States* v. *F.G.R. Roth*, 22 CCPA 293, T.D. 47347 (1934), figures cast from clay models of animals made by a professional sculptor were held to be original sculptures and first and second *replicas.*

in the absence of any showing that Varlecchi had produced the model from which it was duplicated.

The foregoing cases construed the terms "replicas" and "reproductions" as they appeared in paragraph 1807 (and its predecessor provisions) prior to its liberalization by amendment in 1959 by Public Law 86–262.[2] As this provision as amended provides that the original shall "include the original work or model and not more than ten *castings*, replicas, or reproductions made from the sculptor's original work or model, *with or without a change in scale and regardless of whether or not the sculptor is alive at the time the castings, replicas, or reproductions are completed*" [emphasis supplied], it is questionable whether "replicas" and "reproductions" have the limited meanings defendant ascribes to them. However, we need not explore this aspect of the issue any further in view of the serious deficiencies of proof in this record.

Assuming that Rouranelli was a professional sculptor (the record is barren on this point) there is not an iota of proof that his plaster model, "Childhood Tribute", is itself an original sculpture, see *United States* v. *J.E. Bernard & Co., Inc.*, 17 CCPA 475, T.D. 43932 (1930); *H.H. Elder & Co., Forest Lawn Co.* v. *United States*, 64 Cust. Ct. 182, C.D. 3979 (1970); or that the instant importation is the first or tenth statue pointed from his model. *Sylvan Lang* v. *United States*, 45 Cust. Ct. 220, Abstract 64399 (1960); *Ward Eggleston Galleries, F.L. Kraemer and Co.* v. *United States, supra; H.A. Whitacre, Inc.* v. *United States*, 6 Cust. Ct. 403, C.D. 504 (1941).

Nor have plaintiffs established that the plaster "Goddess of Dawn" model, which the witness "assumed" was produced by Varlecchi, was the original or the first creation of this particular statue (exhibit 13 lists the original as by Forzani); or that other statues were not reproduced or copied from this model before Forest Lawn obtained it.

The remaining statues are not original works of art as they do not meet the test of originality which, as laid down by this court, is whether the artist who executed the sculpture or statuary exercised his own aesthetic imagination and artistic conception in creating the work. *H. H. Elder & Co., Forest Lawn Co.* v. *United States, supra; Forest Lawn Co., and H. H. Elder & Co.* v. *United States*, 41 Cust.

---

[2] Paragraph 1807 formerly provided for "* * * original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms 'sculpture' and 'statuary' as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words 'painting,' 'drawing,' 'sketch,' 'sculpture,' and 'statuary' as used in this paragraph shall not be understood to include any articles of utility or for industrial use, nor such as are made wholly or in part by stenciling or any other mechanical process; * * *."

Ct. 411, Abstract 62476 (1958). These statues are merely faithful imitations of the ones at Forest Lawn; their successful execution was dependent solely upon Varlecchi's skill in copying the so-called originals.

In *United States* v. *J. E. Bernard & Co., Inc. supra,* involving panorama paintings copied and enlarged from miniature reproductions of antique wall papers and claimed free of duty as original paintings, the appellate court stated (17 CCPA at page 479) :

> * * * It is true that there might be instances where an artist had used a photograph or a miniature as a general guide for him to follow, but the artist exercised such esthetic imagination and conception as to justify his completed work being classed as an original painting; but that is not the case with the paintings here in issue. Their owner testified that they were "reproductions of the antiques." The artist was not called upon to conceive anything, nor exercise his imagination. He was called upon to paint a faithful reproduction of scenes upon antique wall paper, and the success of his work depended upon his faithfully following the original as shown by the miniatures which he copied.

A comparison of photographs of the statues at Forest Lawn with those of their duplicates in issue herein (exhibits 5 through 12) reveals that, except for some minor differences, Varlecchi carried out his commission to make copies of the former. It is clear that, as distinct from the production of the sculptures in *Forest Lawn Memorial-Park* v. *United States,* 29 Cust. Ct. 224, C.D. 1472 (1952), and the mosaic panels in *H. H. Elder & Company, Forest Lawn Company* v. *United States,* 61 Cust. Ct. 50, C.D. 3525 (1968), Varlecchi did not, indeed, might not, under the terms of the order, exercise his own aesthetic imagination and conception in producing the articles at bar.

Plaintiffs have not overcome the presumptively correct classification herein.

The protest is overruled; judgment will be entered accordingly.